OPINION.
{¶ 1} Defendant, Victor Pierce, entered a plea of no contest to carrying a concealed weapon in violation of R.C. 2923.12(A), after the trial court had overruled his motion to suppress evidence. The trial court found Defendant guilty and sentenced him to five years of community control sanctions, which included seven months in jail. Defendant has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR {¶ 2} "The trial court erred in overruling appellant's motion to suppress evidence gained in violation of his constitutional right to freedom from unreasonable search and seizure."
 {¶ 3} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994), 93 Ohio App.3d 586. Upon appellate review of a decision on a motion to suppress, the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 4} The facts found by the trial court in this case are as follows:
 {¶ 5} "On February 22, 2002, Deputy Darren Harvey of the Montgomery County Sheriff's Department was working the 3:00 p.m. — 11:30 p.m. shift in Harrison Township, Montgomery County, Ohio. The jurisdiction of the department includes the area of Needmore Road. There is a Best Western Motel located at the northeast corner of Needmore Road and Interstate 75. There is a nightclub located in the Best Western Motel. Deputy Harvey was completing his log in his marked cruiser and was parked in the northwest corner of the parking area, in the far corner of the parking lot of the Best Western approximately 10:30 p.m. on February 22, 2002. Deputy Harvey was aware that there had been problems with vehicle break-ins in the parking lot at the Best Western. Deputy Harvey observed a four door silver vehicle enter the parking lot of the Best Western from the east. He noticed that the vehicle did not have its lights on, which heightened his suspicion. After parking, the driver remained in his vehicle for between thirty seconds and one minute. Deputy Harvey did not observe the dome light illuminate in the vehicle, nor did he see any activity in the vehicle.
 {¶ 6} "Deputy Harvey approached the vehicle and parked his cruiser at an angle behind the silver vehicle, as his training required. As he approached the vehicle, the only visible occupant exited the vehicle and hurriedly approached the officer. His hands were visible. The Deputy had not ordered the occupant out of the vehicle. Deputy Harvey ordered the occupant to stop and asked the occupant for identification. The identification provided was an Illinois license but the automobile was registered in Georgia. Deputy Harvey asked the occupant, who identified himself as Donald Brown, what he was doing in the parking lot. The occupant, who purported to be named Donald Brown was later identified as Victor Stanley Pierce. Pierce stated that he was going to a friend's house in Columbus. Pierce knew the first name of the friend, but not the last name, nor did he know where the friend lived. Pierce also stated that the vehicle belonged to a friend, but he could not identify the friend by name. At this point in time, the officer became suspicious that the vehicle might be stolen. Deputy Harvey noticed that the picture on the driver's license provided to him was not that of Pierce; Pierce did not know the Social Security Number, date of birth, or middle initial of the person identified on the driver's license, but he did know the address listed on the license. Deputy Harvey was concerned that there may be warrants for the arrest of the person with whom he had made contact and that the person had given him a false identification or the identification of another. Pierce was patted down for the officer's safety and placed in the back of the cruiser.
 {¶ 7} "Deputy Harvey approached the vehicle again to determine if there were any other occupants of the vehicle. He did not enter the vehicle but instead looked into the vehicle with the aid of his flashlight. Deputy Harvey observed the butt of a gun between the seats as he looked in the vehicle from the windshield. He also observed the steering column and determined that it was intact. After running the license number through the computer, Deputy Harvey learned that the vehicle was not reported stolen, but that it was not registered to either Donald Brown or Victor Stanley Pierce." (Decision, Entry and Order, July 29, 2002, pp. 1-3.)
 {¶ 8} The totality of these facts and circumstances, when viewed through the eyes of a reasonable and prudent police officer on the scene, are clearly sufficient to give rise to a reasonable suspicion that criminal activity might be afoot, justifying the investigative stop and detention of Defendant. Terry v. Ohio, supra; State v. Andrews (1991),57 Ohio St.3d 86. Defendant argues, however, that this stop, though valid at its inception, turned into an impermissible fishing expedition for evidence of a crime because the scope and duration of this stop far exceeded what was necessary to effectuate the purpose of the stop and dispel Deputy Harvey's suspicions about criminal activity. Florida v.Royer (1983), 460 U.S. 491.
 {¶ 9} Given the facts and circumstances present in this case, we conclude that the events that continued to unfold after the initial stop justified Defendant's continued detention.
 {¶ 10} When Deputy Harvey first approached Defendant he asked for identification. Defendant provided an Illinois driver's license. The vehicle Defendant was driving, however, had Georgia license plates. Deputy Harvey was suspicious about that, and he asked Defendant if the vehicle was his. Defendant replied that it belonged to a friend but Defendant did not know his friend's name. That aroused Deputy Harvey's suspicions that this vehicle might be stolen.
 {¶ 11} At some point during their encounter, though Deputy Harvey could not recall precisely when, Defendant provided Deputy Harvey a piece of paper he had in his back pocket which allegedly contained the name of his friend who owned this vehicle. Although Deputy Harvey's testimony indicates that he likely would have terminated this encounter had Defendant been forthcoming with that information, it is obvious that Defendant did not produce this information early on in Deputy Harvey's investigation such that it dispelled Harvey's suspicions about whether this vehicle might be stolen.
 {¶ 12} When Deputy Harvey examined more closely the Illinois license Defendant had given him, he discovered that the picture on that license differed markedly from Defendant's appearance. Moreover, while Defendant knew the address on the license, he did not know the middle name or social security number on the license. This further aroused Deputy Harvey's suspicions that the Illinois license did not belong to Defendant, and that Defendant might be wanted by law enforcement and using false identification to avoid apprehension.
 {¶ 13} Defendant told Deputy Harvey that he was on his way to Columbus, Ohio to see a friend, but Defendant did not know his friend's last name or address, or where he was supposed to go, only that he was supposed to call his friend's phone number when he got there. That further aroused Deputy Harvey's suspicions about possible criminal activity.
 {¶ 14} Deputy Harvey patted Defendant down for weapons and placed him in the rear of his police cruiser for safety reasons. Deputy Harvey was working alone that night and he was concerned about whether this vehicle might be stolen and who or what might be inside that vehicle. Deputy Harvey wanted to look in the windows of Defendant's vehicle, and for obvious safety reasons he did not want Defendant behind him or to have access to that vehicle while Harvey examined it.
 {¶ 15} Deputy Harvey decided to examine Defendant's vehicle by looking through the windows in order to see if anyone else was hiding in the vehicle, and in order to check the ignition, steering column and VIN number to see if there were any signs the vehicle was stolen. When Deputy Harvey looked through the windshield, he observed the butt end of a gun sticking out from underneath the front seat. Deputy Harvey subsequently ran the vehicle's plates and discovered that the vehicle was not stolen. He recovered the gun, which is the basis of the offense of carrying a concealed weapon with which Defendant was charged.
 {¶ 16} The totality of these facts and circumstances justified the continued detention of Defendant after he was initially stopped, while Deputy Harvey continued to investigate his suspicions that criminal activity might be afoot. Defendant's conduct after Deputy Harvey initially stopped him, rather than dispelling Harvey's suspicions about possible criminal activity, instead further aroused and heightened those suspicions. The scope and duration of the stop in this case was not excessive or constitutionally unreasonable.
 {¶ 17} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 18} "Appellant's conviction for carrying a concealed weapon is not supported by the manifest weight of the evidence."
 {¶ 19} Defendant argues that his conviction is against the manifest weight of the evidence because it is obvious from Deputy Harvey's testimony that a portion of the gun was discernible from outside the vehicle, and therefore the weapon was not concealed for purposes of R.C. 2923.12(A).
 {¶ 20} The indictment in this case, which Defendant does not challenge, mirrors the language of R.C. 2923.12(A), and it is clearly sufficient in its terms to charge the offense of carrying concealed weapons. Crim.R. 7(B). Defendant's no contest plea constitutes an admission of the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). Thus, when Defendant entered his no contest plea in this case, the trial court was required to find Defendant guilty and enter a judgment of conviction, because Defendant's no contest plea operates as a waiver of his right to challenge on appeal the factual merits of the carrying concealed weapons charge. State v. Bird, 81 Ohio St.3d 582,1998-Ohio-606; State v. Carter (April 12, 2002), Montgomery App. No. 19105.
 {¶ 21} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.